## EVANSVILLE *v.* DENNETT.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 509. Submitted May 2, 1895. — Decided March 2, 1896.

The recital in a series of bonds, issued by a municipal corporation in Indiana in payment of its subscription to the stock of a railroad company, that they were issued " in pursuance of an act of the legislature of the State of Indiana and ordinances of the city council of said city, passed in pursuance thereof" do not put a purchaser upon inquiry as to the terms of the ordinances under which the bonds were issued.

The recital in such series that the bonds were issued to the railroad company, " by virtue of a resolution of said city council passed May 23, 1870," do not put a purchaser upon inquiry as to the terms of that resolution and charge him with knowledge of its terms.

Such recitals in such bonds as against a *bona fide* purchaser for value of such bonds estop the municipal corporation from asserting that the bonds were not issued, for stock subscribed, upon a petition of two thirds of the resident freeholders of the city, distinctly setting forth the company in which stock was to be taken, and the number and amount of shares to be subscribed.

Under the recitals in the bonds issued to the railroad company a *bona fide* purchaser for value was not put upon inquiry to ascertain whether a proper petition of two thirds of the residents of Evansville, freeholders of that city, had been presented to the common council, before that body had subscribed for stock in the said railroad company.

A *bona fide* purchaser for value of the bonds issued to the Evansville, Carmi, and Paducah Railroad Company is not charged by the recitals in said bonds with notice that they were issued in pursuance of an invalid act, and in pursuance of an election under it; and he had a right to assume, from the recital, that the prerequisites of both the valid act and the invalid act had been observed by the common council before the issuance of such bonds.

THE case is stated in the opinion.

*Mr. George A. Cunningham* for plaintiff in error.

*Mr. George A. Sanders* and *Mr. William A. Bowers* for defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This case is here upon a certificate by the Judges of the United States Circuit Court of Appeals for the Seventh Circuit.

It appears from the statement of facts accompanying the questions propounded to this court that, on May 1, 1868, the city of Evansville issued its bonds, bearing date on that day, to the amount in the aggregate of three hundred thousand dollars, in payment of its subscription to the stock of the Evansville, Henderson and Nashville Railroad Company.

Each bond was for the sum of one thousand dollars, was made payable to the bearer thirty years after date, with interest on presentation of the coupons attached, and was of the tenor and effect following:

" $1000.00.                                                       No. ——.
                 " United States of America.
             " City of Evansville, State of Indiana.
    " On account of stock subscription on the Evansville, Henderson and Nashville Railroad Company.
    " The city of Evansville, in the State of Indiana, promises to pay to the bearer thirty (30) years after date the sum of one thousand dollars, at the office of the Farmers' Loan and Trust Company, of New York, with interest thereon at the rate of seven per centum per annum, payable semi-annually at the office of the Farmers' Loan and Trust Company, in the city of New York, on the first day of November and the first day of May of each year, on presentation and delivery of the interest coupons hereto attached. This being one of a series of three hundred bonds of like tenor and date issued by the city of Evansville, in payment of a subscription to the Evansville, Henderson and Nashville Railroad Company, made in pursuance of an act of the legislature of the State of Indiana

and ordinances of the city council of said city, passed in pursuance thereof. The city of Evansville hereby waives all benefit from valuation or appraisement laws.

"In testimony whereof, the said city of Evansville has hereunto caused to be set its corporate seal, and these presents to be signed by the mayor of said city, and countersigned by the clerk thereof.

"Dated the 1st of May, 1868.

"WILLIAM H. WALKER, *Mayor.*

" A. M. McGRIFF, *City Clerk*."


On December 1, 1870, the city also issued bonds, amounting in the aggregate to three hundred thousand dollars, in payment of its subscription to the stock of the Evansville, Carmi and Paducah Railroad Company, each bond being dated December 1, 1870, for the sum of one thousand dollars, payable to the Evansville, Carmi and Paducah Railroad Company, or bearer, December 1, 1895, with interest on presentation of the coupons attached. Each of those bonds was in the following form:

"Total amount authorized, three hundred thousand dollars.
"No. —. $1000.00.
"City of Evansville, State of Indiana.

"Evansville, Carmi and Paducah Railroad Company.

"By virtue of an act of the general assembly of the State of Indiana, entitled 'An act granting to the citizens of the town of Evansville, in the county of Vanderburg, a city charter,' approved January 27, 1847; and by virtue of an act of the general assembly of the State of Indiana, amendatory of said act, approved March 11, 1867, conferring upon the city council of said city power to take stock in any company authorized for the purpose of making a road of any kind leading to said city; and by virtue of the resolution of said city council of said city, passed October 4, 1869, ordering an election of the qualified voters of said city upon the question of subscribing three hundred thousand dollars to the capital stock of the Evansville, Carmi and Paducah Railroad

Company, and said election, held on the 13th day of November, 1868, resulting in a legal majority in favor of such subscription, and by virtue of a resolution of said city council, passed May 23, 1870, ordering an issue of the bonds of the city of Evansville (of which this is a part) to an amount not to exceed three hundred thousand dollars, bearing interest at the rate of 7 per cent per annum, for the purpose of paying the subscription as authorized above. The said city of Evansville hereby acknowledges to owe and promises to pay to the Evansville, Carmi and Paducah Railroad Company, or bearer, one thousand dollars, without relief from valuation or appraisement laws, payable on the 1st day of December, A.D. 1895, at the Farmers' Loan and Trust Company, in the city of New York, with interest from the date thereof, at the rate of 7 per cent per annum, said interest payable semi-annually on the first day of June and the first day of December on presentation of the proper coupons for the same at said bank. The faith and credit and real estate revenues and all other resources of the said city of Evansville are hereby solemnly and irrevocably pledged for the payment of the principal and interest of this bond.

"In testimony whereof, the mayor of the city of Evansville has hereunto set his hand and affixed the corporate seal of the said city, and the city clerk of said city has countersigned these presents this 1st day of December, 1870.

"WM. HELDER, *City Clerk.*        WM. BAKER, *Mayor.*"

The charter of Evansville, approved January 27, 1847, in the fortieth clause of section 30 thereof, gave the city power "to take stock in any chartered company for making roads to said city, or for watering said city, and in any company authorized or empowered by the commissioners of Vanderburg County to build a bridge on any road leading to said city; and to establish, maintain and regulate ferries across the Ohio River from the public wharves of said city: *Provided*, That no stock shall be subscribed or taken by the common council in any such company, unless it be on the petition of two thirds of the residents of said city, who are freeholders

of the city, distinctly setting forth the company in which stock is to·be taken, and the number and amount of shares to be subscribed: *And provided, also,* That in all cases where such stock is taken the common council shall have power to borrow money and levy and collect taxes on all real estate (either inclusive or exclusive of improvements, at their discretion) for the payment of said stock." Laws of Indiana, Local, 1846–47, p. 14, c. 1.

This clause of the original charter of Evansville was, in form, amended by the act of the legislature of the State of Indiana, approved December 21, 1865, entitled "An act to amend the fortieth clause of section 30 of an act entitled 'An act granting to the citizens of the town of Evansville, in the county of Vanderburg, a city charter,' approved January 27, 1847, and declaratory of the meaning of the second section of the same act." Laws of Indiana, Called Session, 1865, pp. 76, 83.

The certificate before us states that "under the decisions of the Supreme Court of Indiana, this act was repugnant to the constitution and invalid, in that it did not set out the entire section as amended."

In 1867 the legislature of Indiana attempted to amend the act of 1865, above referred to, by an act approved March 11, 1867, entitled "An act to amend the first section of an act entitled 'An act to amend the fortieth clause of section thirty of an act entitled "An act granting to the citizens of the town of Evansville, in the county of Vanderburg, a city charter," approved January 27, 1847, and declaratory of the meaning of the second section of the same act,' approved December 21, 1865, so as to authorize the common council of the city of Evansville to subscribe for and take stock in the Evansville, Henderson and Nashville Railroad Company, or any other company, or corporation, organized under and by virtue of the laws of the Commonwealth of Kentucky, for the purpose of constructing a railroad leading from Nashville, in the State of Tennessee, to a point on the Ohio River at or near Evansville, Indiana." Laws of Indiana, 1867, p. 121, c. 52.

This act authorized subscriptions for stock in the Evansville,

Henderson and Nashville Railroad Company, or other railroad companies, by the city of Evansville, when a majority of the qualified voters of the city, who were also taxpayers, should vote therefor.

It is certified to us that under the decision of the Supreme Court of the State of Indiana this latter act was invalid, because amendatory of a prior invalid act.

The bonds in question, of both series, were in fact issued in attempted compliance with the act of March 11, 1867, referred to in the recitals in the bonds issued to the Evansville, Carmi and Paducah Railroad Company.

The ordinances of the city council of the city of Evansville authorizing the issue of both series of bonds disclose that they were issued pursuant to an election by the legal voters of the city of Evansville, but do not recite that any petition of resident freeholders of the city was presented to the common council, as required by the charter; and no such petition was, in fact, in either case made or presented to the common council of the city of Evansville.

The defendant in error, William S. Dennett, purchased bonds of both issues, before maturity and for value, and is a *bona fide* holder thereof.

This suit is brought upon matured coupons of both series of bonds.

The questions propounded are these:

1. Does the recital in the series of bonds, issued in payment of subscription to the Evansville, Henderson and Nashville Railroad Company, that they were issued " in pursuance of an act of the legislature of the State of Indiana and ordinances of the city council of said city, passed in pursuance thereof" put a purchaser upon inquiry as to the terms of the ordinances under which the bonds were issued?

2. Does the recital in the series of bonds issued to the Evansville, Carmi and Paducah Railroad Company, that they were issued " by virtue of a resolution of said city council passed May 23, 1870," put a purchaser upon inquiry as to the terms of that resolution and charge him with knowledge of its terms?

3. Do the recitals in the bonds issued to the Evansville, Carmi and Paducah Railroad Company, as against a *bona fide* purchaser for value of such bonds, estop the city of Evansville from asserting that such bonds were not issued, for stock subscribed, upon a petition of two thirds of the resident freeholders of the city, distinctly setting forth the company in which stock was to be taken, and the number and amount of shares to be subscribed?

4. Under the recitals in the bonds issued to the Evansville, Carmi and Paducah Railroad Company was a *bona fide* purchaser for value put upon inquiry to ascertain whether a proper petition of two thirds of the residents of Evansville, freeholders of that city, had been presented to the common council, before that body had subscribed for stock in the said railroad company?

5. Was a *bona fide* purchaser for value of the bonds issued to the Evansville, Carmi and Paducah Railroad Company charged by the recitals in said bonds with notice that they were issued in pursuance of an invalid act, and in pursuance of an election under it, or had such a purchaser a right to assume, from the recital, that the prerequisites of both the valid act and the invalid act had been observed by the common council before the issuance of such bonds?

Such is the case made by the statement of facts. By that statement we are informed that the act of the legislature of Indiana of December 21, 1865, purporting to amend the fortieth clause of section 30 of the charter of Evansville granted in 1847, as well as the act of March 11, 1867, amendatory of the above act of December 21, 1865, were adjudged by the Supreme Court of Indiana to be unconstitutional and invalid. And, upon that basis, this court is asked to answer the questions embodied in the certificate from the judges of the Circuit Court of Appeals.

Under this presentation of the case, we put aside the acts of 1865 and 1867 as giving no support to the rights of the plaintiff, and look alone to the charter of 1847.

It cannot be doubted that the power given by the charter of 1847 " to take stock in any chartered company for making

*roads* to said city," authorized the city to subscribe to the capital stock of the Evansville, Henderson and Nashville Railroad Company, as well as of the Evansville, Carmi and Paducah Railroad Company. In *City of Aurora* v. *West*, 9 Indiana, 74, 86, one of the questions was whether the authority given to the city council of Aurora, in the State of Indiana, "to take stock in any chartered company for making roads to said city," was authority to subscribe to the stock of a railroad company. The Supreme Court of Indiana said : "Here, the power is expressly granted, and the question is merely whether the road in which the stock was subscribed is one contemplated by the charter. We think, also, that a company chartered to build a railroad is chartered to build a road. We think a railroad is a road as properly as a turnpike road, or a plank road, is a road ; and one of these kinds was contemplated by the charter, and not common public highways, as the latter are not constructed by chartered companies, while the former are, and the stock is to be taken by the city in a chartered company. A railroad would accommodate the people of the city more than a plank or a turnpike road, and the stock would be of more value."

It is true that the city charter provided that "no stock shall be subscribed or taken by the common council in such company, unless it be on the petition of two thirds of the residents of said city, who are freeholders of the city, distinctly setting forth the company in which stock is to be taken, and the number and amount of shares to be subscribed." But these were only conditions which the statute required to be performed or met before the power given was exercised. That there was legislative authority to subscribe to the stock of these companies cannot be questioned, although the statute declared. that the power should not be exercised except under the circumstances stated in the statute.

Was a *bona fide* purchaser of bonds issued in payment of a subscription of stock — the power to subscribe being clearly given — bound to know that the conditions precedent to the exercise of the power were not performed ? If the bonds had not contained any recitals importing a performance of such

conditions before the power to subscribe was exercised, then it would have been open to the city to show, even as against a *bona fide* purchaser, that the bonds were issued in disregard of the statute, and, therefore, did not impose any legal obligation upon it. *Buchanan* v. *Litchfield*, 102 U. S. 278; *School District* v. *Stone*, 106 U. S. 183, 187.

But the bonds issued on account of subscription to the stock of the Evansville, Henderson and Nashville Railroad Company recite that the subscription was "made in pursuance of an act of the legislature and ordinances of the city council passed in pursuance thereof." This imports not only compliance with the act of the legislature, but that the ordinances of the city council were in conformity with the statute. It is as if the city had declared, in terms, that all had been done that was required to be done in order that the power given might be exercised.

The bonds issued to the Evansville, Carmi and Paducah Railroad Company recite that they were issued "by virtue of" the city's charter of January 27, 1847, and that recital imports compliance with the provisions of the charter. The additional recitals that the bonds were issued by virtue of the act of March 11, 1867, as well as by virtue of a resolution of the city council, ordering an election of the qualified voters of the city, which resulted in a legal majority in favor of such subscription, and of a resolution ordering the issuing of bonds, did not, as between the city and a *bona fide* purchaser for value, prevent the latter from assuming the truth of the recital that the bonds were issued by virtue of, that is, in compliance with, the city's charter.

In *School District* v. *Stone*, above cited, the court said: "Numerous cases have been determined in this court, in which we have said that where a statute confers power upon a municipal corporation, upon the performance of certain precedent conditions, to execute bonds in aid of the construction of a railroad, or for other like purposes, and imposes upon certain officers — invested with authority to determine whether such conditions have been performed — the responsibility of issuing them when such conditions have been com-

plied with, recitals, by such officers, that the bonds have been issued 'in pursuance of,' or 'in conformity with,' or 'by virtue of,' or 'by authority of' the statute, have been held in favor of *bona fide* purchasers for value to import full compliance with the statute, and to preclude inquiry as to whether the precedent conditions had been performed before the bonds were issued." *Town of Coloma* v. *Eaves*, 92 U. S. 484; *Commissioners* v. *Bolles*, 94 U. S. 104; *Mercer County* v. *Hacket*, 1 Wall. 83; *Anderson County Commissioners* v. *Beal*, 113 U. S. 227, 238–9 and authorities there cited; *Cairo* v. *Zane*, 149 U. S. 122.

The charter of the city of Evansville gave authority to subscribe to the stock of these railroad corporations, and, as held by the Supreme Court of Indiana, in *Evansville, Indianapolis & Cleveland Straight Line Railroad Co.* v. *Evansville*, 15 Indiana, 395, 412, the express power given to borrow money necessarily implied " the power to determine the time of payment, and also the power to issue bonds or other evidences of indebtedness."

As therefore the recitals in the bonds import compliance with the city's charter, purchasers for value having no notice of the non-performance of the conditions precedent, were not bound to go behind the statute conferring the power to subscribe, and to ascertain, by an examination of the ordinances and records of the city council, whether those conditions had, in fact, been performed. With such recitals before them they had the right to assume that the circumstances existed which authorized the city to exercise the authority given by the legislature. The charter of 1847 contemplated a petition of two thirds of the resident freeholders of the city. The act of 1867 provided for an election by the qualified voters, who were also taxpayers. Notwithstanding the provisions of the charter of 1847 the city council before subscribing for the stock might well have ascertained what were the wishes of taxpayers, who were also qualified voters. So far as the recitals in the bonds are concerned, the purchaser of bonds might properly have assumed that both methods were pursued. Although, in strict law, he was chargeable with knowledge that the act

of 1867 was invalid, and, consequently, that an election held under it could not itself authorize a subscription of stock by the city, he was entitled to stand upon the validity of the city charter, and to act upon the assurance, given by the recitals in the bonds, that the provisions of that charter had been respected, and, therefore, that the subscription of stock had been preceded by a petition to the city council of two thirds of the resident freeholders of the city.

The present case comes directly within *Van Hostrup* v. *Madison City*, 1 Wall. 291, 296, 297.

The city of Madison, Indiana, was authorized by its charter "to take stock in any chartered company for making a road or roads to the said city, . . . *provided*, that no stock shall be subscribed . . . unless it be on petition of two thirds of the citizens who are freeholders," etc. Mr. Justice Nelson, delivering the unanimous judgment of this court, said: "It is supposed that the authority to subscribe is tied down to a chartered road, the line of which comes within the limits of the city; and that the words are to be taken in the most literal and restrictive sense. But this, we think, would be not only a very narrow and strained construction of the terms of the clause, but would defeat the manifest object and purpose of it. The power was sought and granted, with the obvious idea of enabling the city to promote its commercial and business interests, by affording a ready and convenient access to it from different parts of the interior of the State, and thus to compete with other cities on the Ohio River and in the interior which were or might be in the enjoyment of railroad facilities." Touching another issue in that case — and a similar issue is presented in the present litigation — the court said: "Another objection taken is, that the proviso requiring a petition of two thirds of the citizens, who were freeholders of the city, was not complied with. As we have seen, the bonds signed by the mayor and clerk of the city recite on the face of them that they were issued by virtue of an ordinance of the common council of the city, passed September 2, 1852. This concludes the city as to any irregularities that may have existed in carrying into execution the power granted to sub-

scribe the stock and issue the bonds, as has been repeatedly held by this court.  Our conclusion upon the whole case is, that full power existed in the defendants to issue the bonds, and that the plaintiffs are entitled to recover the interest coupons in question.  Even if the case had been doubtful, inasmuch as the city authorities have given this construction to the charter, and bonds have been issued and are in the hands of *bona fide* purchasers for value, we should have felt bound to acquiesce in it."

The case before us cannot be distinguished from the one just cited.

It may be added that the questions here presented were carefully examined by Judge Woods in the case of *Moulton* v. *City of Evansville*, 25 Fed. Rep. 382, 388, where will be found a full review of the adjudged cases.  That was an action to recover the amount of coupons of bonds of the same class as those here involved.  The conclusion there reached was that the purchaser of the bonds had a right to rely on the recital as showing that a proper petition of freeholders was presented to the council before the subscription was ordered.  The court said: "The purchaser, it is clear, was bound to know that the act of 1867, and the election ordered and held in compliance with it, were void, and that the law of 1847 required a petition of freeholders as a condition precedent to the right of the common council to make such stock subscriptions; but while bound by legal construction to know these things for himself, he, for the same reason, had a right to presume that the common council and officials of the city who ordered and made the bonds had the same knowledge; that they ordered and held the election as matter of precaution merely, and without the omission of any requirement of the act of 1847, as they must have intended to certify, if they acted honestly, as they are presumed to have acted intelligently, in ordering the bonds issued."

It is contended that the defence is sustained by *Barnett* v. *Denison*, 145 U. S. 135, 139.  That case has no application to the issues here presented.  The only point there decided was that the requirement of its charter, that all bonds issued by

the city of Denison, "shall specify for what purpose they were issued," was not satisfied by a bond that purported on its face to be issued by virtue of an ordinance, the date of which was given, but not its title or contents.

The conclusion we have reached upon legal grounds, and in accordance with our former decisions, is the more satisfactory, because of the long time which elapsed before any question was raised by the city as to the validity of the bonds. The city having authority, under some circumstances, to put these bonds upon the market and having issued them under the corporate seal of the city, and under the attestation of its highest officer, certifying that they were issued in payment of a subscription of stock made in pursuance of the city's charter, the principles of justice demand that the bonds, in the hands of *bona fide* holders for value, should be met according to their terms, unless some clear, well settled rule of law stands in the way. No such obstacle exists.

*The court answers the first, second, and fourth questions in the negative, and the third in the affirmative. Its answer is in the negative to the first clause, and in the affirmative to the second clause, of the fifth question.*