PICKENS TP. v. POST.

(Circuit Court of Appeals, Fourth Circuit. February 6, 1900.)

No. 328.

1. STATUTE—TITLE OF ACT.

A statute is not invalid, under a constitutional provision requiring every act to relate to one subject, which shall be expressed in its title, where it has but one general object. which is expressed in its title, and the body of the act is germane to such object.

2. MUNICIPAL BONDS—ESTOPPEL BY RECITALS.

A recital in negotiable municipal bonds, by the authorities authorized to issue such bonds upon certain conditions, that all such conditions have been complied with, is conclusive as to the regularity of all proceedings precedent to their issuance in favor of a bona fide holder.

3. FEDERAL COURTS—FOLLOWING STATE DECISIONS.

The decision of the supreme court of a state. declaring unconstitutional a statute authorizing the issuance of municipal bonds, is not conclusive on a court of the United States in a case involving the rights of a bona fide purchaser of such bonds, whose rights accrued prior to such decision, and, where the supreme court of the United States has determined the same act to be constitutional and valid, its decision governs in such case.[1]

4. MUNICIPAL BONDS—BONA FIDE HOLDERS—BURDEN OF PROOF.

The holder of a negotiable instrument is presumed to have taken it before maturity, for value and without notice of defenses.

5. SAME—RIGHTS OF INDORSEE.

A purchaser of negotiable municipal bonds from a prior holder acquires all the rights of such prior holder, and such rights cannot be affected by his own knowledge, at the time of his purchase, of defenses to such bonds.

6. SAME—UNAUTHORIZED DELIVERY—NOTICE TO PURCHASERS.

The fact that negotiable municipal bonds were issued by one with whom they had been deposited in escrow by the municipality, without authority, cannot affect their validity in the hands of a purchaser, who had no knowledge of the conditions upon which they were held.

7. SAME—NOTICE TO PURCHASER OF DEFENSES—LIS PENDENS.

A bona fide purchaser of municipal bonds before maturity is not affected with constructive notice of a suit respecting the validity of the statute under which such bonds were issued.

In Error to the Circuit Court of the United States for the District of South Carolina.

This case comes up on writ of error to the circuit court of the United States for the district of South Carolina. The plaintiff below, defendant in error here, holds certain bonds and coupons of the township of Pickens, in Edgefield county, S. C. His suit is on these bonds and coupons. The bonds, with the coupons, were made, executed, and issued under the following circumstances: The general assembly of South Carolina, on 21st December, 1883, passed an act to authorize counties, townships, cities, and towns interested in the construction of the Carolina, Cumberland Gap & Chicago Railroad Company to subscribe to the capital stock of the said company. 18 St. at Large S. C. 409. Section 1 of this act authorizes the subscription in such sums, in bonds or money, as a majority of the qualified voters of the county. township, city, or town may authorize the county commissioners of such county or the municipal authorities of such city or town to subscribe. Section 5 makes it the duty of the county commissioners of each county or township interested to submit the question of subscription to the voters of the county or township, giving them

---

[1] As to state laws as rules of decision in federal courts, see notes to Griffin v. Wheel Co., 9 C. C. A. 548; Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.

power to order the election, specifying the time, place, and purpose of such election. Section 7 makes it the duty of the county commissioners to declare the election, and to make the subscription, if so authorized by the result of the election. Section 9 provides "that for the purpose of this act all the counties, and the townships in said counties, along the line of railroad, or which are interested in its construction as herein provided for, shall be, and they are hereby, declared to be bodies politic and corporate and vested with the necessary powers to carry out the provisions of this act, and shall have all the rights and be subject to all the liabilities in respect to any rights or causes of action growing out of the provisions of this act. The county commissioners of the respective counties are declared to be the corporate agents of the counties and townships so incorporated and situate within the limits of the said counties." At the time of the passage of this act townships in South Carolina were not bodies corporate, and were simply territorial designations. Pickens township being interested in the construction of this road, the county commissioners of Edgefield county ordered the election, and, the result authorizing the subscription, they subscribed in bonds the sum of $15,000. The subscription was made. The bonds were prepared and executed. Each bond, on its face, contains a certificate by the county commissioners to the effect that all of the conditions precedent to the issuing of such a bond have been fully performed. These bonds were deposited by the county commissioners with the Carolina Savings Bank at Charleston, with authority to issue them upon certain conditions. The plaintiff, claiming to be holder of these bonds, sued upon 25 of them, each for $100, and numbered from 1 to 25, inclusive; upon 15 of the bonds, each for $500, numbered from 25 to 40, inclusive; and upon 5 of them, each for $1,000, and numbered 41 to 45, inclusive; together with coupons on each of them, respectively. The Pickens township bonds were issued to one George Potts, under an order of the president of the railroad, dated 11th December, 1888. They got into the hands of McCracken & Co., who were contractors, building the road. McCracken & Co. transferred them to the firm of Post, Martin & Co., and, Martin having withdrawn, the firm became Post & Pomeroy, of which firm the present plaintiff is the survivor. The railroad was never built as originally contemplated. It has been completed to Edgefield Courthouse. It has not been so completed as to pass out of Pickens township, although it runs into that township. The bonds are coupon bonds, payable to bearer. They bear date 1st January, 1888. Coupons are payable annually.

The answer contains five defenses: (1) It denies each and every allegation of the complaint, save such as may be hereafter admitted. (2) Puts in issue the existence of the firm of Post & Pomeroy, and the survivorship of Post, and denies the bona fides of the holding of plaintiff. (3) Denies that Pickens township is a corporation; denies the validity of the act authorizing the subscription; denies the validity of the election; denies the validity of their issue, and denies the authority of the county commissioners to issue them; denies that plaintiff got the bonds in due course of business, and avers that he got them on speculation, and without consideration, with full knowledge of their invalidity; avers that the road had not been completed through the township, and that the bonds were acquired after the supreme court of South Carolina had declared similar bonds unconstitutional and void. (4) Alleges that the bonds had been deposited with the Carolina Savings Bank upon certain conditions, which have not been performed, and that the delivery of them by said bank to Potts was fraudulent and void. (5) Denies that Pickens township is a body politic and corporate. (6) Pleads the statute of limitations as to such of the coupons as did not mature within six years, and as to such annual installments payable on said bonds as did not fall due and payable within six years.

The cause, being at issue, was tried before the circuit court and a jury. The court, upon all the evidence, instructed the jury to find for the plaintiff. Judgment was entered on the verdict, a writ of error was sued out on exceptions taken at the trial, and on these exceptions the cause is here. The exceptions cover the legal grounds taken in the answer, and allege error in that the judge took from the jury the questions of fact whether the bonds were not acquired after the decision of the supreme court of South Carolina determining that the township bonds issued under precisely the same authority as these

were invalid, and the further fact as to the bona fide acquisition of these bonds by the plaintiffs for valuable consideration, without notice.

G. W. Croft (Croft & Tillman, on the brief), for plaintiff in error.

H. A. M. Smith (N. G. Evans and Mitchell & Smith, on the brief), for defendant in error.

Before SIMONTON, Circuit Judge, and PAUL and WADDILL, District Judges.

SIMONTON, Circuit Judge (after stating the facts as above). It is contended that the act authorizing the issue of these bonds infringes section 20, art. 2, of the constitution of South Carolina, requiring every act to relate to one subject, expressed in its title. This objection is met by San Antonio v. Mehaffy, 96 U. S. 312, 24 L. Ed. 816; Jonesboro City v. Cairo & St. L. R. Co., 110 U. S. 192, 4 Sup. Ct. 67, 28 L. Ed. 116; Town of Mahomet v. Quackenbush, 117 U. S. 508, 6 Sup. Ct. 858, 29 L. Ed. 982; Morton v. Comptroller General. 4 S. C. 430.

The crucial question in this case is, does it appear from all the evidence that the plaintiff is a bona fide holder of these bonds before maturity for value and without notice of infirmity? If he be such a holder, all controversy as to the regularity of the proceedings antecedent to the preparation, execution, and issuance of these bonds is settled by the certificate of the county commissioners which appears on each bond. Town of Coloma v. Eaves, 92 U. S. 484, 23 L. Ed. 579; Evansville v. Dennett, 161 U. S. 434, 16 Sup. Ct. 613, 40 L. Ed. 760.

This is certainly the case as to every fact except the constitutional power in the legislature to pass the act authorizing the subscription. Gunnison Co. v. E. H. Rollins & Sons, 173 U. S. 255, 19 Sup. Ct. 390, 43 L. Ed. 689.

This power in the legislature is denied. It is charged that so much of this act as creates the townships into corporations, and authorizes them to subscribe to this railroad, is in conflict with section 20, art. 2, and with section 8, art. 9, of the constitution of the state of South Carolina, of force at the date of the act. Floyd v. Perrin, 30 S. C. 1, 8 S. E. 14, 2 L. R. A. 242. Whether the plaintiff is affected by this decision in Floyd v. Perrin depends also upon the fact whether he be a bona fide purchaser for value before maturity, without notice. The supreme court of the United States in Folsom v. Township Ninety-Six, 159 U. S. 627, 16 Sup. Ct. 174, 40 L. Ed. 278, had before it the validity of township bonds issued in South Carolina, and the effect upon the validity of these bonds of the decision in Floyd v. Perrin. The same bonds sued upon in Folsom's Case were passed upon by the supreme court of South Carolina in Floyd v. Perrin. In Folsom's Case the supreme court held the bonds valid, notwithstanding the decision in Floyd v. Perrin. No question was made as to the purchase of the bonds by Folsom. As to him the court says: "There not being shown a single decision of the state court against the constitutionality of the act of 1885, before the plaintiff purchased his bonds, nor any settled course of decision upon the subject even since his purchase, the question of the validity of these

bonds must be determined by this court according to its own view of the law of South Carolina." It then decided that the act, in that it created townships into corporations and clothed them with power to subscribe to railroads, was not in conflict with the constitution of South Carolina. This decision was made November 18, 1895.

But for these reasons it cannot be doubted that the supreme court would have followed the uniform current of decisions, and would have adopted the construction placed by the highest court of the state on its own constitution and statutes. Claiborne Co. v. Brooks, 111 U. S. 400, 4 Sup. Ct. 489, 28 L. Ed. 470; Norton v. Shelby Co., 118 U. S. 425, 6 Sup. Ct. 1121, 30 L. Ed. 178; Gormley v. Clark, 134 U. S. 338, 10 Sup. Ct. 554, 33 L. Ed. 909; Stutsman Co. v. Wallace, 142 U. S. 293, 12 Sup. Ct. 227, 35 L. Ed. 1018; Sioux City Terminal Railroad & Warehouse Co. v. Trust Co. of North America, 173 U. S., at page 107, 19 Sup. Ct. 341, 43 L. Ed. 628.

The evidence of the plaintiff tends to show that McCracken & Co., the contractors, got these bonds some time in 1888; that of the defendants, by the order to the Carolina Savings Bank, the bailee, shows that they were delivered to one George Potts, under an order dated 11th December, 1888. Who Potts was does not appear. As they were dated January 1, 1888, interest, and an installment on the principal, were due January 1, 1899. So they were issued before maturity. Now, the holder of a negotiable instrument is presumed to have taken it before maturity, for valuable consideration, and without notice of any objection to which it was liable, and this presumption stands until overcome by sufficient proof. Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865; Chambers Co. v. Clews, 21 Wall. 317, 22 L. Ed. 517; San Antonio v. Mehaffy, supra; Montclair Tp. v. Ramsdell, 107 U. S. 147, 2 Sup. Ct. 391, 27 L. Ed. 431. To impeach the title of a holder for value of negotiable paper, by proof of any facts and circumstances outside of the instrument itself, it must first be shown that he had knowledge of such facts and circumstances at the time the transfer was made. Goodman v. Simonds, 20 How. 343, 15 L. Ed. 934. Such a holder is not affected by anything which has occurred between other parties, unless he had knowledge thereof at the time of purchase. Brown v. Spofford, 95 U. S. 474, 24 L. Ed. 508. A bona fide holder of negotiable paper is entitled to transfer to a third person all the rights with which he is vested, and the title so acquired cannot be affected by proof that the indorsee was acquainted with the defenses existing against the paper. Gunnison Co. v. E. H. Rollins & Sons, 173 U. S. 275, 19 Sup. Ct. 390, 43 L. Ed. 689. Such are the safeguards which the law throws around negotiable paper, and which protect one holding it. Thus, the burden of proof is on the defendant to show the defects in plaintiff's title.

The defendant charges that these bonds were in escrow with the Carolina Savings Bank, and that the issuance of them by that bank was fraudulent and void. But notice of the conditions on which the Carolina Savings Bank held these bonds has not been brought home to the holder of them. If the maker or indorser, before delivery to the payee, leave the note in the hands of a third person as an escrow, to be delivered on certain conditions only, and the per-

son to whom it is thus intrusted violate the confidence reposed in him, and put the note in circulation, this, though not a valid delivery as to the original parties, must, as between a bona fide holder for value and the maker or indorser, be treated as a delivery rendering the note or indorsement valid in the hands of such bona fide holder. Burson v. Huntington, 21 Mich. 415, cited and approved Provident Life & Trust Co. v. Mercer Co., 170 U. S. 605, 18 Sup. Ct. 788, 42 L. Ed. 1156.

It is also charged that the bonds, when transferred, showed that there were coupons unpaid as well as installments of principal. But the evidence does not disclose precisely the time when McCracken & Co. got the bonds. Some time in 1888. If this be correct, neither principal nor coupons were past due. But, if they were, "failure to pay interest alone is not sufficient in law to throw discredit upon negotiable paper, upon which it is due, to subject the holder to the full extent of his security to antecedent equities." Morgan v. U. S., 113 U. S. 476, 5 Sup. Ct. 588, 28 L. Ed. 1044.

It is also alleged that the case of Floyd v. Perrin was decided on November 30, 1888, before, or, at the least, just about the time of, the delivery of these bonds; that this was notice to the holder of their invalidity. It may well be doubted if this court can recognize Floyd v. Perrin as authority to this extent. We are controlled by the decisions of the supreme court of the United States, and that court evidently was of the opinion that Floyd v. Perrin was an erroneous interpretation of the constitution of South Carolina. Folsom v. Township Ninety-Six, supra. Be this as it may, "the question of lis pendens, as applicable to negotiable securities, was fully considered by us in the case of Warren Co. v. Marcy, 97 U. S. 107, 24 L. Ed. 977, and we then held that a bona fide purchaser before maturity is not affected with constructive notice of a suit respecting such paper." Cass Co. v. Gillett, 100 U. S. 593, 25 L. Ed. 585; Thompson v. Perrine, 103 U. S. 806, 26 L. Ed. 612.

In conclusion, we see nothing in the testimony which rebuts the presumption in favor of a holder of commercial paper not yet matured. The court below was not in error in instructing the jury to find for the plaintiff. The judgment of the circuit court is affirmed.