# COURT OF APPEALS

OF THE

## STATE OF COLORADO.

## April Term, 1912.

[No. 3641.]

### TOWN OF AURORA V. HAYDEN.

1. MUNICIPAL CORPORATIONS—*Power to Contract Loans—Ordinance.*
Under Mills' Stat. secs. 4403, 4443, (Rev. Stat. secs. 6525, cl. 6, 6673)
no loan can be contracted on behalf of a municipal corporation save
by authority of an ordinance.

2. —— —— *Publication of Ordinance.* And the ordinance must be
published in conformity to the provisions of the statute. If there be a
newspaper published, or a newspaper of general circulation, within the
town, the ordinance must be published in such newspaper. Only where
there is no such newspaper is a posting permitted. The requirements
of the statute are not dispensed with by a general ordinance directing
the posting of all ordinances.

An ordinance assuming to authorize the issue of bonds of the municipality, for the purchase of a system of water works, is of a "general and permanent nature," within the meaning of the latter section quoted, and until published, as required by the statute, is without effect. Bonds of the municipality issued thereunder are void.

3. —— —— *Recitations of Bonds—Effect.* A recitation of the bonds that the statute has been complied with does not establish the publication of the ordinance, nor estop the town to deny it.

4. —— —— *Purchaser of Bonds Put on Inquiry.* One who purchases such a bond must, at his peril, take notice of the statute, and its limitations, and advise himself as to whether these have been complied with.

5. —— —— *Bonafide Purchaser.* There being an absolute lack of power in the officers of the corporation to issue the bonds, the plea of *bonafide* purchase does not avail.

6. —— —— *Payment of Interest on the Bonds—Effect.* That the town has for a series of years paid interest upon bonds issued without authority, levying a tax for the purpose, does not estop it from pleading their invalidity.

7. STATUTES—*Construed.* The provisions of the statute requiring the publication of municipal ordinances (Mills' Stat. sec. 4443, Rev. Stat. sec. 6673) that "it shall be a sufficient defense to any suit or prosecution for such fine or penalty," applies to actions of every character. The failure to publish is a complete defense to any action founded upon an ordinance.

8. PRECEDENTS—*General Language*, is to be taken in connection with the facts of the particular case.

Precedent judicial opinions ought not to be followed where grievous wrong may result.

*Appeal from Denver-District Court.* HON. CARLTON M. BLISS, Judge.

Mr. WM. A. BRYANS and Mr. JOHN A. GORDON, for appellant.

Mr. JOHN A. DENISON, for appellee.

Presiding Judge SCOTT delivered the opinion of the court.

This is an action for recovery upon forty-one municipal bonds of the denomination of one thousand dollars

each, bearing date of July 1st, 1891, alleged to have been
issued by the incorporated town of Fletcher, now the
town of Aurora, for the purpose of the purchase of a
water works system, the total amount of the issue being
in the sum of $150,000.00. The plaintiff below, appellee
here, alleging that he was a purchaser for value, and
prior to maturity.

The amended answer, in so far as it is necessary to
consider, denies that the plaintiff was an innocent pur-
chaser for value, and alleges that the bonds were issued
without power or authority from the city council or Board
of Trustees of the Town of Fletcher, in that the ordi-
nance under which such bonds purport to have been is-
sued was not published as required by law, nor at all,
and for such reason did not become a valid ordinance and
is void. That there was therefore no authority for the
issuance of the bonds, and no power in the mayor, city
clerk or treasurer who executed the same to do so.

The replication asserts that the municipality is es-
topped by the recitals in the bonds and by ratification by
reason of certain subsequent levies of tax, and payments
of interest for the years 1894, 1895, 1896 and 1897, and
denies the allegations as to invalidity.

The case was tried to the court without a jury and
certain special findings of fact made as follows:

"First: That the newspaper, the Denver Times,
was of general circulation in said town at the time of the
passage of ordinance No. 10, shown in the record, and
that said ordinance No. 10 was never published in said
newspaper or any other newspaper published in or of
general circulation in said town.

"Second: That the plaintiff is a bona fide holder
of the bonds in suit, and purchased them in usual course
of business for value, before maturity in June, 1906, with-
out notice of any defense.

"Third: That the defendant town, from the year 1891 to about the year 1901, annually passed an ordinance levying a tax for the purpose of paying interest on the bonds in controversy in accordance with said ordinance No. 10, and with the proceeds of such tax paid interest coupons on the bonds in controversy herein, for the years 1893, 1894, 1895 and 1896.

"Fourth: As to other facts, no special finding is intended to be made, it being agreed by counsel that the failure to specially find other facts shall not prejudice the case of either party, but as to such the case shall remain as if no special finding had been made."

Judgment was thereupon rendered in favor of the plaintiff for the face of the bonds and the interest, in the total sum of $74,449.00, from which this appeal was taken.

The special findings of the court are so incomplete and cover so limited a part of the issues involved as to leave no clear indication of the theory of the judge in reaching the conclusions upon which the judgment was based. But it is contended by the appellant:

1. That the ordinance which purported to authorize the issuance of the bonds was void and therefore never became effective, for the reason that it was never published as required by law, and hence the mayor, treasurer and city clerk were wholly without authority to issue the same.

2. That the recitals in the bonds do not create an estoppel, for the reason that the ordinance being thus void there was an entire absence of authority upon the part of such city officials to sign or issue the bonds.

3. That the levy of a tax and the subsequent payment of interest coupons on the bonds, for the years 1893, 1894, 1895 and 1896, do not constitute such a ratification of the bonds as will bind the appellant, the town of Fletcher.

It will thus be assumed from the pleadings, briefs and arguments of counsel that the judgment of the court was based upon one or more of the following legal conclusions:

1. That the ordinance was not ineffective or invalid.

2. That by the recitals in the bonds the appellant is estopped from availing itself of the defense of invalidity of the ordinance in the case of an innocent purchaser for value.

3. That by the levy of the tax and payment of the interest coupons there was such ratification of the issuance of the bonds as will estop the city from asserting the invalidity of the ordinance.

The validity of the issue of the bonds in question has been before the Federal Courts for consideration upon several occasions and upon the questions presented here, but without conclusive or final determination.

In the matter of the power of towns within this state to issue bonds for the purposes for which the bonds in question purport to have been issued, it was then provided by statute:

"The city council and board of trustees in towns. shall have the following powers:   *   *   *   *   *Sixth:* To contract an indebtedness upon behalf of the city, and upon the credit thereof, by borrowing money or issuing the bonds of the city or town for the following purposes, to-wit:   *   *   *   for the purpose of the purchase or construction of water works for fire and domestic purposes;   *   *   *   and no loan for any purpose shall be made, except it be by ordinance, etc."   Sec. 4403, 2 Mills' Ann. Stat.

How ordinances of the character were to be adopted and to become effective was provided by Sec. 4443, Mills' Ann. Stat., as follows:

"All ordinances shall, as soon as may be after their passage, be recorded in a book kept for that purpose, and be authenticated by the signature of the presiding officer of the council or board of trustees and the clerk; and all by-laws of a general or permanent nature, and those imposing any fine, penalty, or forfeiture, shall be published in some newspaper published within the limits of the corporation, or if there be none such, then in some newspaper of general circulation in the municipal corporation; and it shall be deemed a sufficient defense to any suit or prosecution for such fine, penalty, or forfeiture to show that no such publication was made; Provided, however, that if there is no newspaper published within, or which has a general circulation within, the limits of the corporation, then and in that case, upon a resolution being passed by such council or board of trustees to that effect, such by-laws and ordinances may be published by posting copies thereof in three public places, to be designated by the board of trustees, within the limits of the corporation; and such by-laws and ordinances shall not take effect and be in force until the expiration of five days after they have been so published or posted. But the book of ordinances herein provided for shall be taken and considered in all courts of this state as prima facie evidence that such ordinances have been published as provided by law.".

These statutes have received consideration and construction in the federal courts.

In the case of *National Bank of Commerce v. Town of Granada,* reported in 41 Fed., 87; 44 Fed., 262; 48 Fed., 278, and 54 Fed., 100, the whole question involved here has been exhaustively discussed by different judges sitting in the United States Circuit Court, and the Circuit Court of Appeals.

That was a case wherein the plaintiff was held to be

an innocent purchaser and where the question turned upon the recitals in the bonds purporting to have been issued under authority of an ordinance of the Town of Granada, Bent County, Colorado, but which ordinance the court found to be invalid.

The court, in passing upon a motion for a new trial in that case, 44 Fed., 262, said:

"On further consideration I am persuaded that in so far as the opinion delivered herein is open to the construction that the requirement respecting the publication of by-laws and ordinances should be restricted to such as are of a penal character, it is not tenable. The words, 'and such by-laws and ordinances,' include and refer to the term, 'all by-laws and ordinances of a general or permanent nature,' as much so as to 'those imposing any fine, penalty, or forfeiture.' The terms 'by-laws' and 'ordinances' are used in their ordinary sense, and imply one and the same thing." 1 Dill. Mun. Corp., sec. 307.

Further consideration and investigation have satisfied my mind that such an ordinance as the one under review comes within the term "of a general or permanent nature." A by-law sustains the same relation to the municipal corporation as a legislative act does to the state. A general law is synonymous with a public act. *Clark v. City of Janesville*, 10 Wis., 178, 179.

Public or general statutes are, in England, those which relate to the kingdom at large. In this country they are those which relate to or bind all within the jurisdiction of the law-making power, limited as that power may be in its territorial operation, or by constitutional restraints. Private or special statutes relate to certain individuals of particular classes of men. * * * In this country the disposition has been on the whole to enlarge the limits of the class of public acts, and to bring within

it all enactments of a general character, or which in any way affect the community at large. * * * acts, too, which although affecting only a particular locality apply to all persons, are public acts." Sedg. St. & Const. Law, 24, 25. So Potter's Dwar. St., p. 53, says:

"The most comprehensive, if not the most precise, definition is that given by Darris, 'that public acts relate to the public at large, and private acts concern the particular interest or benefit of certain individuals, or of particular classes of men.' * * * A general or public act, then, regards the whole community; special or private acts relate only to particular persons, or to private concerns." The court then concludes:

"The only fact recited, as already shown, on the face of the bond in question is that an ordinance was adopted. It does not recite that the ordinance was ever published. The adoption of the ordinance devolved upon the city council in organic capacity at its lawful assembly. Proof of this fact, as shown in the former opinion herein, could be made *aliunde* without the ordinance being signed by the president of the council, or having been entered in the book of ordinances. But its publication, while a duty devolving upon the board, and in the prescribed manner, in the absence of any prescription in the statute as to how its publication shall be proved, cannot, in my opinion, be successfully claimed to be included in the mere recitation that the bond was issued under an ordinance adopted. The act of publication is subsequent to, and independent of, the act of adoption. The statute being silent as to how this fact of publication shall be evidenced, and no prescription that its certification shall be filed or entered of record by the clerk or other officer of the council, it was as much accessible to the purchaser of the bonds as to anyone. The recitation on the face of the bond that it was issued under ordinance, referred the purchaser to

the law requiring the publication of such an ordinance. Should he not have informed himself respecting that matter, by which he could have learned that no publication had been made? The ordinance, though adopted, fell still-born for want of publication."

The case was again tried before Judge Parker of the circuit court sitting at Denver, 48 Fed., 278. Here the conclusions of Judge Philips were fully approved, and the duty of a purchaser of municipal bonds was likewise declared to be that he is bound to take notice of that which the law requires, and, in this regard, the ordinance of a municipality, when required to confer authority, was placed upon the same plane as a statute. The court said:

"The recital in the bond that it was issued under an ordinance of the city of Granada, passed by the council of said city, will not make the bonds valid in the hands of plaintiff as an innocent holder, for it, under the law, was bound to take notice of the legal authority of the town of Granada to issue the bond. The legal authority of the officers of the town to do this must be found in some ordinance authorizing them to so act. The recitation on the face of the bond that it was issued under an ordinance referred the purchaser to the law requiring the publication of the ordinance. The ordinance conferred no legal authority upon the town officers to execute and issue the bonds until the expiration of five days after it had been published. The corporation of Granada must have had legislative authority to issue the bonds issued by it. Although the plaintiff is holder for value, and before maturity, it must, at its peril, take notice of the existence and terms of the law by which it is claimed the power to issue such bonds is conferred. The holder of a municipal bond is chargeable with notice of the statutory provisions under which it was issued. *Bank v. City of St. Joseph,*

31 Fed. Rep., 216; *Anthony v. Jasper Co.,* 101 U. S., 693; *Ogden v. Daviess Co.,* 102 U. S., 634; *Bank v. Porter Tp.,* 110 U. S., 608, 4 Sup. Ct. Rep., 254; *McClure v. Township of Oxford,* 94 U. S., 429. The last named case I regard as especially relevant to the present one. In that case the statute under which the bonds were issued was referred to on the face of the bonds, and, although passed and approved at a certain date, was not by its terms to go into effect until after its publication in the Kansas Weekly Commonwealth. Chief Justice Waite said in that case that 'Every dealer in municipal bonds, which upon their face refer to the statute under which they were issued, is bound to take notice of the statute and all its requirements. Every man is chargeable with notice of that which the law requires him to know, and of that which, after having been put upon inquiry, he might have ascertained by the exercise of reasonable diligence.' '' In support of the conclusion the court cites with approval the following:

''We have always held that every holder of a municipal bond is chargeable with notice of the provisions of the law by which the issue of his bond was authorized. If there was no law for the issue, there can be no valid bond.'' *Ogden v. Daviess Co.,* 102 U. S., 634.

''Dealers in municipal bonds are charged with notice of the laws of the state granting power to make the bonds they find on the market. This we have always held. If the power exists in the municipality, the bona fide holder is protected against mere irregularities in the manner of its execution, but if there is want of power, no legal liability can be created.'' *Anthony v. Jasper Co.,* 101 U. S., 693.

''The adjudged cases, examined in the light of their special circumstances, show that the facts which a muni-

cipal corporation, issuing bonds in the aid of the construction of a railroad, was not permitted against a bona fide holder to question, in face of a recital in the bonds of their existence, were those connected with or growing out of the discharge of the ordinary duties of such of its officers as were invested with authority to execute them, and which the statute conferring the power made it their duty to ascertain and determine before the bonds were issued; not merely for themselves, as the ground of their own action in issuing the bonds, but equally as authentic and final evidence of their existence, for the information and action of all others dealing with them in respect to it." *Bank v. Porter Tp.*, 110 U. S., 608. The court then finally concludes:

"The agreed facts in this case show, in effect, there was no law authorizing the issue of the bonds to which the coupons in suit belong. The plaintiff was bound to take notice of that fact. It cannot, therefore, under the law, be entitled to recover."

The case was then appealed to the United States Circuit Court of Appeals, 54 Fed., 100, and there the court, speaking through Judge Caldwell, and after holding that such an ordinance was of a "general or permanent nature," said:

"The provision of the act that such ordinances shall not take effect or be in force until they are published in the mode provided by the act is mandatory. This ordinance, never having been published, never went into effect. Not being in force, it conferred no authority on the board of trustees, or any officer of the town to do any act under it; and no one could acquire any right based on it, or on any act of the officers of the town assuming to act under it. It had no more legal effect than if it had never been passed by the board of trustees. 1 Dill. Mun. Corp., secs. 331-334, and notes. But the learned counsel for the

plaintiff in error contends that the recital in the bonds that they 'are issued under an ordinance' of the town relieves the plaintiff from the burden of showing that the ordinance was published, and estops the defendant from showing that it was not.

It has never yet been held that a false recital in a bond can make that a law which never was a law. When an ordinance has been duly enacted, and has taken effect, authorizing the officers of a town to issue its negotiable bonds upon certain precedent requirements or conditions, such as a petition of a given number of taxpayers, or a majority vote or other like conditions, and the officers issuing the bonds are the appointed tribunal to decide whether there has been a compliance with such precedent conditions, and the bonds issued recite that they are issued in pursuance of such ordinance, it is probably true that such recital, in favor of bona fide purchasers for value, would import a full compliance with the requirements of the ordinance, and preclude inquiry as to whether the precedent conditions were performed before the bonds were issued. But that doctrine has no application to this case. Here there was no ordinance in force under which the board of trustees, or any officer of the town, could perform any act. The authority to issue the bond never attached, on any terms or conditions. The action of the mayor and clerk was not simply irregular, but was without the sanction of any law. The point was never reached at which they could lawfully do any act under the supposed ordinance. It is a case of a total want of authority to do the act upon any conditions, and not a case where the authority to do the act existed, but the conditions precedent to the exercise of the authority were not observed.

The statute which provides that ordinances shall not take effect until they are published is a public statute, of

which all persons are bound to take notice. The statute makes the recording of an ordinance in the ordinance book *prima facie* evidence that it has been published according to law. But this ordinance was not recorded, nor authenticated as an ordinance, by the signatures of the mayor and clerk, as required by law. Moreover, it is not shown that the mayor and clerk, or either of them, had any duty or function to perform in relation to publishing ordinances, or determining when they had been published according to law. The determination of this fact when it becomes material, and is contested, and the ordinance has not been recorded, is, under the statute, a matter for judicial inquiry. The statute itself provides that it shall be a sufficient defense to any suit or prosecution for a fine, penalty or forfeiture to show that the ordinance imposing it was not published as required by the statute, and it is obvious that the same defense must prevail against any civil right grounded upon an ordinance which was never published, no matter by or against whom such right is asserted. The plaintiff was bound to know, independently of the recital in the bond, that there was such an ordinance in existence. This fact once established, it might well assume that the recital was sufficient evidence that the conditions prescribed by the ordinance for issuing the bonds had been complied with. It was as much the right and duty of the plaintiff to determine this question as it was of the clerk and mayor, and the determination of either, in any form, would not bind or conclude the town. It is only when officers are invested by law with the authority to determine or adjudicate upon the fact that their recital operates as an estoppel.

If the recital in this case had stated, in terms, that the ordinance had been duly published, it would not have estopped the town, because neither the mayor nor the clerk, nor both together, are invested with the authority

to determine that question, and anything they might say or certify to on the subject, save as witnesses in court, would not be evidence anywhere, or bind anyone. 'If,' says the supreme court, 'the officers authorized to issue the bonds upon a condition are not the appointed tribunal to decide the fact which constitutes the condition, their recital will not be accepted as a substitute for proof. In other words, where the validity of bonds depends upon an estoppel claimed to arise upon the recital of the instrument, the question being as to the existence of the power to issue them, it is necessary to establish that the officers executing the bonds had lawful authority to make the recitals, and to make them conclusive. The very ground of the estoppel is that the recitals are the official statements of those to whom the law refers the public for authentic and final information on the subject.' *Dixon Co. v. Field,* 111 U. S., 83, 94, 4 Sup. Ct. Rep., 315; *Sutliff v. Lake County Com'rs.,* 13 Sup. Ct. Rep., 318.

The law does not refer the public to these officers, or to either of them, for information as to the publication of town ordinances; and their statements upon that subject have no more signficance or binding force than those of any other citizen of the town.''

It is contended that in the *Granada* case the ordinance was, in fact, not passed, and therefore it is to be distinguished from the case at bar wherein the ordinance was passed but was not published. Just how this case can be differentiated is not apparent, for it is conceded that the publication, and the mode of publication provided by the statute, is mandatory. In addition to this there was the provision of the statute declaring that an ordinance cannot become effective until five days after such publication. Then, in the eye of the law, there was no ordinance. The pretended ordinance was no more effective than if it had never been before the board of trustees.

But the very bond issue now under consideration has been before the federal courts, and there three times determined without a definite settlement of the issue then and now raised, (a) the validity of the ordinance as dependent on the fact of publication; (b) if the ordinance is invalid by reason of failure to publish, is the municipality bound by the recitals in the bonds? (c) is such failure to publish a statutory defense?

In *Town of Fletcher v. Hickman,* 136 Fed., 568, Judge Hook, speaking for the court, held that it not being shown that the publication was after the date of the bonds, there was a failure of proof as to want of publication for the reason that it may not be presumed that the bonds were issued, or as counsel say "emitted," on the day of their date. The court said:

"It is to be observed that the contention of the plaintiff in error is predicated upon the assumption that the date of the bonds was the time of their issue, and that a designation of the places for posting, and a posting of the ordinance, after the bonds were issued could serve no lawful purpose. But there is no presumption that the date of the bonds is the date of their actual emission or issue."

For this reason the judgment of the circuit court in favor of Hickman, holder of the bonds, was sustained.

In that case, therefore, the questions before us were not determined and there is nothing in the case to indicate a different doctrine from that held in the Granada case.

Hickman again brought suit, this time upon the judgment obtained in the former case and upon additional matured coupons on bonds held by him, 165 Fed., 403. There the court again approves the doctrine of the Granada case, for it says:

"The court has held (*National Bank of Commerce v. Town of Granada,* 54 Fed., 100, 4 C. C. A., 212), constru-

ing the Colorado Statutes, that the publication of an ordinance authorizing the creation of an indebtedness and issue of bonds for the purposes contemplated in this case was an essential prerequisite to the validity of the issue, and such is assumed by counsel to be the law applicable to this case. The contention on the part of the town is that, conceding an ordinance to have been duly passed, there was no lawful publication of it, and, as a result, the bonds issued by authority of the ordinance are void.''

The case was again decided on the question of failure of proof upon the part of the city. The court saying:

''The bonds in question bore date of July 1, 1891, and to prove in the former case that there was no designation of three public places by the board of trustees for the posting of the ordinance, defendant introduced in evidence copies of the town records covering the period from the incorporation of the town until and inclusive of July 1, 1891. These records disclosed that the board took no action designating places for posting the ordinance prior to the date of the bonds, but this court, on the former appeal, held that inasmuch as the date of bonds is not necessarily or usually the accurate date of their issue, lawful posting of the ordinance might have occurred after July 1, 1891, and inasmuch as the burden of showing the failure to publish was on defendant, it had not borne the burden. To supply the proof thus shown to be lacking the contest is renewed in this second suit, on coupons of the same issue of bonds, and defendants have proved that the bonds in question were actually issued and emitted on July 1, 1891, and that there was no order of the board of trustees authorizing the posting of the ordinance prior to that time. Upon making this proof defendant now contends that the gap is closed, and that it appears that the ordinance was never published, and is therefore void.

''We are unable to agree with this contention. Publi-

cation of the ordinance by posting was a resort permissible only when no newspaper was published or in general circulation within the limits of the corporation. Whatever may be the proof with respect to the publication of a newspaper within the town of Fletcher, there is none which fairly tends to show that there was no newspaper which generally circulated in that town.''

Hickman again, and for a third time, brought suit, and this time upon the former judgment, and the bonds and remaining coupons held by him. The same defense by the town was interposed. This case was decided by the circuit court in favor of the defendant, it apparently having met the objections raised by the court in the former cases as to the matter of proof of failure to publish the ordinance as required by the statute. But the Circuit Court of Appeals declined to consider the question, holding that as between the parties the matter was *res adjudicata*. But the language of the court would clearly indicate an approval of the doctrine in the *Granada* case as to the necessity of the publication of the ordinance to sustain its validity, or rather that upon proof of failure to publish the ordinance it must be held invalid.

The court said: ''In the prior actions between these parties it was essential, to a judgment for the defendant, that it prove that the ordinance in question was void for want of publication as required by the Colorado statute. The record of the ordinance in the 'Book of Ordinances' is *prima facie* evidence of its validity, and it was incumbent upon the defendant to overcome such *prima facie* evidence. It was bound to offer all of the evidence obtainable upon that question, or take the chances of the ordinance being adjudged valid under the *prima facie* proof of its validity. Whether or not it offered all such evidence is not now material, for if it did not those judgments are no less conclusive upon that question; because

the effect of such judgment as an estoppel is not dependent upon the evidence offered upon those trials, but upon the fact that the invalidity of the ordinance was a question directly in issue and was determined in each case.. Having been so determined, the judgments, remaining unmodified, are conclusive of that question between these parties and their privies." *Hickman v. Town of Fletcher*, December Term, 1911.

In the case presented here it very clearly appears from the evidence and from the findings of the court that the ordinance relied on, as authority for the issuance of the bonds in question, was not published as required by the statute.

1.    There was no newspaper published at the time within the municipality of Fletcher.

2.    There was a newspaper of general circulation within the town of Fletcher and published in the city of Denver, to-wit, the Denver Times.

3.    The ordinance was not published in the said Denver Times, nor in any other newspaper having a circulation within the town of Fletcher.

These are, in substance, the findings of the trial court, and under the reasoning and conclusion in the *Granada* case, the ordinance was void. There was some testimony upon the part of the witness Perry that he saw a copy of the ordinance which had been posted in the waiting room on Colfax avenue some time in 1891.

But under the statute and the state of facts as found by the court, and as appears from the evidence, it was not within the power or authority of the board of trustees to make such a publication. It was not the publication provided by the law to be made in such cases. The only lawful publication under the facts in this case must have been in a newspaper having general circulation within the town.

It will be observed that the authority for publication by posting is found in the proviso to the section, and after the provision in the section that "it shall be a sufficient defense to any suit or prosecution for such fine, penalty or forfeiture to show that no such publication was made." The entire minutes of the proceedings of the board of trustees, from the organization to the date of the issuance of the bonds, are in evidence and these do not show that the board passed or attempted to pass a resolution to the effect that there was no newspaper published within the corporation, and that there was no newspaper of general circulation thereon, nor that the board designated three public places within the limits of the corporation for the posting of the ordinance, or any ordinance, all of which are direct and mandatory requirements of the statute, and without which there could have been no lawful publication by posting.

The city clerk who served as such during all this period testified that he kept a complete record of the proceedings of the board which was contained in the written record in evidence. From this we must conclude that the ordinance relied on did not become effective, and conferred no authority to issue the bonds, under that provision of the statute, which provides that "such by-laws and ordinances shall not take effect and be in force until the expiration of five days after they have been so published or posted."

Hence, there was in law no ordinance, and therefore no authority from the board of trustees for the issuance of the bonds by the executive officers of the city.

It has been held by the supreme court that it is a general rule applicable to the corporate authorities of all municipal bodies that when the mode in which their power on any given subject can be exercised is prescribed by the charter, the mode must be followed, and that the mode in

such cases constitutes the measure of power. *Keese v. City of Denver,* 10 Colo., 112.

Counsel for appellee argue that ordinance No. 1 provided for the posting of all ordinances, and therefore for the one in question. But if we should admit this to be true, it was not within the power of the board of trustees to enact an ordinance in direct conflict with the statute, which is mandatory and controlling.

This conclusion appears to be fully justified by the language found in *Weaver v. Canon Sewer Co.,* 18 Colo. App., 242, as follows:

"It was said by Chief Justice Field in *Zottman v. San Francisco,* 20 Calif., 96, that the rule is general, and applies to the corporate authorities of all municipal bodies, that where the mode in which their power on any given subject can be exercised is prescribed by the charter, the mode must be followed. This utterance was referred to with approval by our own supreme court in *Keese v. Denver,* 10 Colo., 112, in which case it was held that where the statute has prescribed how the municipality may act, it has no power to act in any other or different manner. The same doctrine is announced by Judge Dillon, who says further that the public powers or trusts devolved by law or charter upon the council or governing body, to be exercised by it when and in such manner as it shall judge best, cannot be delegated to others. 1 Dillon Mun. Corp., sec. 96; see also 1 Beach Pub. Corp., 542."

If then, as under these authorities we must conclude, the ordinance was void, and if the appellee was an innocent purchaser of the bonds, is the appellant bound by the recitals in the bonds?

These recitals, in so far as may be necessary to consider, are as follows:

"This bond is one of a series of one hundred and fifty bonds of like tenor and date, numbered from No. 1

to No. 150, both numbers inclusive, and amounting in the aggregate to one hundred and fifty thousand dollars, which have been issued in pursuance of an ordinance of the Town of Fletcher, irrepealable until the payment of these bonds, passed by the Board of Trustees of said town on the eighth day of June, 1891, entitled, 'An ordinance in relation to water works bonds,' and also under and by virtue of and in full compliance with an act of the general assembly of the State of Colorado, entitled, 'An act in Relation to Municipal Corporations,' approved April 4, 1877, and an act amendatory thereof, approved March 2, 1887.

"And it is hereby certified that this issue of bonds is for the purpose of purchasing water works for fire and domestic purposes, and further, that all the provisions of said ordinance and said act have been complied with, and that all acts, conditions and things, requisite to be done precedent to, and in the issuing of said bonds, have been done, happened and performed, in regular and due form as required by law."

It is conceded by counsel of appellee that all of the decisions in the *Granada* case and that of *Peck v. City of Hempstead,* 65 S. W., 653; 27 Civil App. Tex., 80, sustains the contention of the appellant in this case to the effect that the recitals in the bond do not create an estoppel upon the part of the municipality, in a case where an ordinance is necessary to confer power upon the officers of the city to issue the bonds, and where there is no such ordinance, or the ordinance is found to be void.

In the last named case, the executive officers of the city issued and negotiated bonds purporting to be the bonds of the city, having printed thereon what purported to be the ordinance authorizing the issue. The ordinance had not been passed in fact, neither had other requirements of the statute been complied with. These bonds

were sold and the proceeds covered into the city treasury and used for the purposes intended.

It was there held that the bonds were void, and could not be enforced, and it was further held that the city was not estopped from showing that the bonds were not authorized. It was said by the court:

"A city corporation, as a general rule, is only liable upon express contracts authorized by ordinance or other due corporate proceedings. 1 Dill. Mun. Corp., 461; *City of Bryan v. Page,* 51 Tex., 534, 32 Am. Rep., 637; *City of San Antonio v. French,* 80 Tex., 578, 16 S. W., 440, 26 Am. St. Rep., 763; *Wagner v. Porter* (Tex. Civ. App.), 56 S. W., 560; *Brown v. Reese,* 67 Tex., 318, 3 S. W., 292. The power to issue the bonds in this case was vested in the city acting by the city council. It is given in the chapter on the general powers and duties of the city council. Rev. St. 1879, tit. 17, c. 4. The corporation, in the issuance of the bonds, could only act by the city council, and that it could only so express itself by resolution or ordinance."

But it is contended that these authorities have been overruled, and therefore not now regarded as of force. The cases of *School Dist.,* 116 Fed., 838, and *Board of Com., Haskell Co., v. National Life Co.,* 90 Fed., 228, are cited as expressly so overruling the *Granada* case. An examination of the latter case does not justify the construction counsel place upon it. The court there says:

"It is true that in *National Bank of Commerce v. Town of Granada,* 54 Fed., 100, 4 C. C. A., 212, and 10 U. S. App., 692, and in *Hinkley v. City of Arkansas City,* 69 Fed., 768, 773, 16 C. C. A., 395, 400, and 32 U. S. App., 640, 650, this court expressed the view that such a recital would not estop a municipality from showing that no proper ordinance had been passed, or proceedings taken by the legislative body of the municipality, authorizing

the issue of the bonds; but, since those decisions were rendered, the exact question whether or not the recital in a series of bonds that they were issued 'in pursuance of an act of the legislature of the state of Indiana and ordinances of the city council of said city passed in pursuance thereof,' put a purchaser upon inquiry *as to the terms* of the ordinances under which the bonds were issued, was certified to the supreme court by the circuit court of appeals of the seventh circuit, and that court answered that it did not.''

It will be seen from this language that the court does not intend to say that the doctrine of the *Granada* case is not sound as applied to the facts of that case, but the precise question then before the court, as determined in *Evansville v. Dennett,* 161 U. S., 434, was ''whether or not the recital in a series of bonds that they were issued in pursuance of an act of the legislature of the state of Indiana and ordinances of the city council of said city, passed in pursuance thereof, put a purchaser upon inquiry as to the *terms* of the ordinances under which the bonds were issued.

There was no question as to an invalid or void ordinance in that case, but only as to the *terms* of the ordinance. In the *Haskell County* case the Board of County Commissioners had the statutory power to issue the character of bonds in question, and the court, I think, justly declared that having such power they could not make a false certificate on the face of their negotiable bonds, or a false record that they were issued in accordance with the law in such cases, and then defeat these recitals by proof that they were in fact issued for an unlawful purpose. That was a different case from one where officials issuing the bonds were wholly without authority to do so at all, and consequently without authority to make recitals. Indeed, in that case the bonds were held to be

valid. The whole case is one affecting recitals as to the regularity of the proceedings, by those authorized to conduct such proceedings, and to determine the fact as to the regularity of the same.

It would be patent absurdity to hold that a purchaser of such bonds is bound to have knowledge of a statute conferring power upon a board of trustees to enact such an ordinance, and at the same time to say that he is not bound by knowledge of an ordinance conferring power under authority of such statute. The statute alone or without the ordinance confers no power for the issuance of the bonds. The ordinance is as essential and as much the law conferring power as is the statute. Both must be the legal enactments of the respective legislative bodies.

It is a general rule and adopted by the courts of this state, that general language in an opinion is to be taken in connection with the facts of the particular case. *Halbouer v. Cuenin,* 45 Colo., 512; *Denver Jobbers' Association v. The People,* 122 Pac., 404.

Neither do I find that *City of Evansville v. Dennett, supra,* relied on in the *Haskell County* case, sustains counsel's contention. There, the invalidity of the acts of the legislature of 1865 and 1867 were relied on, and the court said:

"Under this presentation of the case, we put aside the acts of 1865 and 1867 as giving no support to the rights of the plaintiff and look alone to the charter of 1847."

These were acts purporting to amend the city charter of 1847. They had been held invalid by the supreme court of the state of Indiana, therefore the court held that the charter still stood as before the attempt to amend it by these invalid statutes, but that under such charter there was authority for the subscription to the railroad stock in question, by the city.

There was no question in that case as to the invalidity of the ordinance under which the subscription was made, which is the precise issue before the court in this case.

The Colorado statute in this respect is general as to all towns. It can only become effective in any one of them by ordinance, which thus becomes the law conferring authority in any particular one of them. Without such law the mayor, treasurer and clerk are, as has been said, with no more authority to issue bonds and make recitals than any other citizen of the town.

The clear distinction between knowledge of the law and knowledge of the regularity of the proceedings under the law, as applied to purchasers of municipal securities, is maintained in the *Evansville v. Dennett* case, where it is said:

"Although, in strict law, he was chargeable with knowledge that the act of 1867 was invalid and consequently that an election held under it could not itself authorize a subscription of stock by the city, he was entitled to stand upon the validity of the city charter and to act upon the assurance given by the recitals in the bonds, that the provisions of that charter had been respected, and therefore that the subscription of stock had been preceded by a petition to the city council of two-thirds of the resident freeholders of the city."

If chargeable with knowledge that the statute was invalid and hence that proceedings under it conferred no authority, certainly the purchaser is chargeable with knowledge of the invalidity of the ordinance, which was the law so far as it applied to the particular bond issue. The officials signing the bonds and making the recitals could claim no authority under the state statute. Their only claim of authority must be based on the ordinance alone. I am unable to find that the statute confers any

power upon the mayor, clerk and treasurer to determine anything in this connection. This power is conferred upon the board of trustees exclusively, and then it may act only by ordinance.

The language of the court in *Fairfield v. School Dist.,* 116 Fed., 838, is much stronger in support of the contention of appellee than any of the cases cited, even to the extent of saying that *Evansville v. Dennett* overruled the *Granada* case, but as before suggested, in discussing that case, we do not regard this statement as justified.

. In that case it was not necessary to make such a statement, and the question involved did not require a reversal of the principle announced in the *Granada* case, for the school board was authorized by statute to issue the character of bonds involved and it did so. The only point urged against the validity of the bonds and which the court overruled was that their issue created an indebtedness of the district in excess of the lawful limitation. The school board had the authority to issue such bonds, and the court simply held that the district was bound by the recitals in the bonds as against an innocent purchaser. We can see no conflict in this conclusion with that in the *Granada* case, where the bonds were issued by individual officers without the requisite authority, either by statute or ordinance.

We have examined with much care the line of decisions cited by appellee and we are unable to find one in which the claim of an innocent purchaser was sustained, upon the theory that the municipality was estopped by the recitals in the bonds, and where the law had not conferred express authority for the action of the board or officials who pretended to act, as in this case, under an invalid ordinance, or where the board of trustees alone may act, and then only by the passage of an ordinance.

We cannot conclude that these decisions of the court

have intended a departure from the uniform rule of the supreme court of the United States, where the question of authority or power was involved, and as stated in *Dixon County v. Field,* 111 U. S., 83, where the court said:

"This principle is the essence of the rule declared upon this point, by this court, in the well considered words of Mr. Justice Strong, in *Coloma v. Eaves,* 92 U. S., 484, where he states (p. 491, 582) that it is, 'Where it may be gathered from the legislative enactment that the officers of the municipality were invested with the power to decide whether the condition precedent has been complied with,' that 'their recital that it has been, made in the bonds, issued by them and held by a bona fide purchaser, is conclusive of the fact and binding upon the municipality; for the recital is itself a decision of the fact by the appointed tribunal.' The converse is embraced in the proposition and is equally true. If the officers authorized to issue bonds, upon a condition, are not the appointed tribunal to decide the fact which constitutes the condition, their recital will not be accepted as a substitute for proof. In other words; where the validity of the bonds depends upon an estoppel, claimed to arise upon the recitals of the instrument, the question being as to the existence of power to issue them, it is necessary to establish that the officers executing the bonds had lawful authority to make the recitals and to make them conclusive. The very ground of the estoppel is, that the recitals are the official statements of those to whom the law refers the public for authentic and final information on the subject. This is the rule which has been constantly applied by this court in the numerous cases in which it has been involved. The differences in the result of the judgments have depended upon the question whether, in the particular case under consideration, a fair construc-

tion of the law authorized the officers issuing the bonds to ascertain, determine and certify the existence of the facts upon which their power, by the terms of the law, was made to depend; not including, of course, that class of cases in which the controversy related, not to conditions precedent, on which the right to act at all depended, but upon conditions affecting only the mode of exercising a power admitted to have come into being. *Marcy v. Oswego,* 92 U. S., 637; *Commrs. v. Marcy,* 97 U. S., 96; *Pana v. Bowler,* 107 U. S., 529.''

In the case at bar, the mayor, city clerk and treasurer of the town were not the appointed tribunal to decide any fact constituting any condition upon which such bonds might be issued. They are not even designated by the statute as authorized to sign such bonds.

If, then, the ordinance under which lies their sole claim to power is held to be invalid, they were without power, and recitals made by them are without effect.

In *Gunnison C. Com. v. Rollins,* 173 U. S.; *Dixon Co. v. Field,* was said to be a leading case on the subject and the following language therein approved: "The estoppel does not arise, except upon matters of fact which the corporate officers had authority by law to determine and to certify."

The court there quotes and approves the extract heretofore set out from *Dixon v. Field, supra.* The reason for a denial of the doctrine of estoppel in case of public officers acting without authority is well stated in *Chisholm v. City of Montgomery,* 2 Woods, 584, as follows:

"Finally the plea that the plaintiffs are bona fide holders of the bonds cannot avail where the defense is want of power to issue them. Of this defect the plaintiffs were bound to take notice. Had the power to issue

the bonds existed, and had the question been whether certain preliminary conditions had been complied with, the plea might, under certain circumstances, have been a good one. * * * Public officers cannot acquire authority by declaring that they have it. They cannot thus shut the mouth of the public whom they represent. The officers and agents of private corporations, entrusted by them with the management of their own business and property, may estop their principals, and subject them to the consequences of their unauthorized acts. But the body politic cannot be thus silenced by the acts or declarations of its agents. If it could be, unbounded scope would be given to the peculations and frauds of public officers. I hold it to be a sound proposition that no municipal or political body can be estopped by the acts or declarations of its officers, from denying their authority to bond it. *The Floyd Acceptances,* 7 Wall, 666."

"The chairman of that board and the town clerk had no authority to issue the same until directed so to do by the board. Without such direction the order in suit is absolutely void in the hands of the plaintiff, or of any other person. * * * The idea that a town officer can, without authority, issue a negotiable town order which, in the hands of a bona fide holder, will bind the town is not to be tolerated for a moment." *Hubbard v. Town of Lyndon,* 28 Wis.

The case of *Presidio County v. Noel-Young Bond Co.,* 212 U. S., 58, cited and relied on by the appellee, is not a departure from this rule, for there the commissioners' court had statutory authority to issue such bonds as may be necessary for court house and jail purposes. The question of the amount necessary was for the commissioners' court to determine and, having so determined, the county was held to be bound by the recitals in the case of an innocent purchaser.

But in justice, the people of a municipality have an equal right to the protection of the law with purchasers of municipal bonds. It is true that where power is conferred upon elected officials, the people must take their chances as to the proper exercise of that power. But the law provides that the bonds in this case could only have been issued by virtue of the authority conferred by ordinance. It likewise provided how such an ordinance was to be enacted. Among other things in this regard it specifically provides how such an ordinance shall be published. It further provided that the ordinance shall not take effect until five days after its publication. Again, it provided that it should be a sufficient defense to any suit arising thereunder to show that no such publication was made. It is plain that these specific provisions as to publicity were for the protection of the people as against the misconduct or ignorance of their officials. The legislature thus wisely provided the opportunity for the people to know, and with such knowledge, the opportunity to object, to protest, or in a lawful manner attempt to restrain action under any such ordinance; and they were given five full days after the passage of an ordinance in which to act before the ordinance might become operative. This law was general. It applied alike to every town in the state. The purchasers of bonds issued in this case were bound by the law. Therefore, to estop the municipality from the plea and proof of invalidity of the ordinance, and hence that the officials who issued the bonds were without authority to do so, is to deny the municipality and its people the equal protection of the law.

The rule is laid down without qualification that where municipal bonds are issued without authority, as distinguished from an issuance under authority but without a compliance with the requirements of the statute, they are absolutely void and can acquire no validity in

the hands of bona fide holders, 21 Am. & Eng. Enc., 66, and numerous authorities cited.

The mayor, treasurer and clerk of a town had no constitutional, statutory or implied power to issue bonds under any circumstances. Bonds were authorized to be issued only by virtue of an ordinance of the municipality, and while such officers may be directed by such ordinance to sign and issue the bonds, it follows that if the ordinance is void, these officers were wholly without power to issue the bonds, and therefore without power to make recitals.

In support of this doctrine the supreme court of Illinois, in *Lippencott v. Pana,* 92 Ill., 34, has said:

"It is the long established rule of this court that where there is an entire absence of power as distinguished from a defective execution of a power, then the recitals of those invested with the ministerial duty of issuing municipal bonds will afford no protection to even bona fide holders for value of such bonds. *Force v. Town of Batavia,* 61 Ill., 100; *Williams v. Town of Roberts,* 88 Ill., 13, and authorities there cited.

"If the bonds were issued without authority and were void, the levy of taxes and payment of interest would not render them valid. *Schuyler Co. v. Farwell,* 25 Ill., 181; *Marshall Co. v. Cook,* 38 id., 48."

Mr. Dillon, in his work on Municipal Corporations, states the rule as to estoppel by recital in case of officers without power of determination, or where such power of determination is in another tribunal, in this unqualified way:

"If the fact against which an estoppel by recital is claimed is one the determination of which is not entrusted to the officers making the bonds, but to other officers or to a different tribunal, a recital importing a compliance

with the law does not estop the municipality from taking advantage of the defense.'' Dillon on Municipal Corporations, sec. 927.

If we admit that the officers who signed the bonds under consideration had the power to do so in case of a valid ordinance, yet it will not be contended that these officers were vested with any power of determination, but that all such power and authority rested solely with a different tribunal, namely, the board of trustees, acting as such.

The author cites in support of this rule *Northern Bank v. Porter Township,* 110 U. S., 608. Mr. Justice Harlan, in his opinion in that case, enters into a careful review of the former decisions of that court bearing upon the question and concludes with the announcement of the doctrine as before stated by Judge Dillon. The facts in that case have peculiar application when compared with the circumstances here.

It would be singular, indeed, if the supreme court in the *Dennett* case, *supra,* would overrule the *Porter Township* case, and the unbroken line of authorities cited and distinguished by Judge Harlan, without expressly saying so, and this the court did not do. Beside, as before pointed out, the facts in the *Dennett* case did not require any such ruling, in order to reach the conclusion as found by the court.

It is true that the writer of the opinion in the *Dennett* case used many expressions which seemingly support the contention of appellee in this case. But these expressions were not necessary and were *obiter dicta.* As was said by Justice Harlan in the *Porter Township* case, in commenting upon the language of decisions relied on by the purchaser in that case, we may repeat as applicable to the language of the *Dennett* case:

''It is not to be denied that there are general expres-

sions in some former opinions which, apart from their special facts, would seem to afford support to this proposition in the general terms in which it is presented. But this court said, in *Cohens v. Virginia,* 6 Wheat., 399, and again in *Carroll v. Carroll's Lessee,* 16 How., 287, that it was 'A maxim not to be disregarded that general expressions in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision.' An examination of the cases, in which those general expressions are found, will show that the court has never intended to adjudge that mere recitals by the officers of a municipal corporation in bonds issued in aid of a railroad corporation preclude an inquiry, even where the rights of a bona fide holder were involved, as to the existence of legislative authority to issue them."

In this case there can be no legislative authority until made effective by ordinance. It follows, therefore, that there was no legislative authority to justify the issuance and signing of the bonds by those officers who did so.

If we should concede that the *Dennett* case holds, as contended by appellees, it is still but one case as against other and numerous cases decided by the supreme court of the United States, and covering a period of more than one hundred years of the history of that court, and even though it be the latest case on the subject, still its soundness may be questioned in the face of what has been so generally held to the contrary by the same court before that time.

It is the personal view of the writer that while state courts of review should accord profound respect to an opinion of the supreme court of the United States, yet in view of the many conflicting opinions and decisions of

that great tribunal, as so vigorously and forcefully pointed out by the late Justice Harlan in the recent government cases involving the Standard Oil and Tobacco corporations; and in other cases determined by bare and reversible majority of the court, as in the *Income Tax* case, that no one opinion is entitled to a halo of sanctity or infallibility.

Preceding judicial opinions of right ought to be followed when founded in sound reason and justice, but never to the extent that grievous wrong may be the result. It is inconceivable that public municipal officials acting wholly without authority of law, and in violation of the law, shall so have the power to bind the municipality as against such unlawful and unauthorized acts.

Does the levy of taxes by the town for the purpose of paying interest on the bonds, and the actual payment of such interest for the four years, as found by the court, constitute such a ratification as will estop the appellant from pleading invalidity?

The rule in such case seems to be general and to the effect that where the defect is one of regularity in the matter of procedure or execution, that such payment is equivalent to a ratification, but where the defect is one of power, there is no such ratification. We have examined all of the authorities cited by counsel for appellee and we are unable to find to the contrary. In *Mountol v. City of Evansville,* 25 Fed., 382, cited by counsel, it was expressly held:

"While the payment of interest will not validate a municipal bond issued without authority of law, in case where the objection is not want of power to issue, but of compliance with a condition in respect to which there may be an estoppel by recital, or other act of the city officials, such payments of interest ought to have great weight."

And in *Clark v. Town of Northampton,* 120 Fed., 661, also cited by counsel, the doctrine was said to be:

"If the bonds had been issued irregularly by the agents of the defendant, within the doctrine declared in many adjudications, the payment of interest upon them for a series of years would amount to a ratification by the defendant, notwithstanding the interest was raised by taxation. But this doctrine is not applicable in cases where there is a total want of authority on the part of the town to issue obligations. *Parkersburg v. Brown,* 106 U. S., 487, 1 Sup. Ct., 442, 27 L. Ed., 238; *Cowdrey v. Town of Caneadea* (C. C.), 16 Fed., 532. 'The objection to them is not that they were issued irregularly, but that there was no power to issue them at all. They are to be made good, if at all, not by waiving irregularities in the execution of an old power, but by the creation of a new one.' *Katzenberger v. Aberdeen,* 121 U. S., 172, 178, 7 Sup. Ct., 947, 950, 30 L. Ed., 911. Under these circumstances, any attempted ratification by the town was nugatory, and it could not estop itself even by the most solemn promise, unless made with statutory sanction."

Having concluded that the bonds were void, it appears quite clear that the subsequent payment of interest cannot ratify them to the extent that they will be thus validated.

But if we discard the question of recitals, and the question of ratification, the statute declaring that ordinances shall be published, and the mode for such publication provides, "it shall be deemed sufficient defense to any suit or prosecution for such fine or penalty or forfeiture, to show that no such publication was made." Counsel have cited no case in disapproval of, or disagreement with the reasoning and conclusion of the circuit court and court of appeals, that this applies to all ordi-

nances. The intent and purpose of the legislature is made clear by the language of the statute. It was to be a complete defense to any suit, arising from an ordinance where such failure to publish is shown. This is such guarantee of protection to the people of a municipality as the legislature could enact. Knowledge of this provision of the statute must be imputed to every purchaser of municipal bonds.

The supreme court of the United States in *Gunnison Co. v. Rollins, supra,* has said:

"Indeed, it is entirely competent for a state to provide by statute that all obligations in whatever form, executed by a municipality existing under its law, shall be subject to any defense that would be allowed in cases of non-negotiable instruments."

But the claim of appellee is here asserted solely upon the theory that he is an innocent purchaser. The trial court found that he was an innocent purchaser. This, the court was obliged to do under the settled rule. The rule applicable to promissory notes in this particular was early adopted as to municipal bonds. They were negotiable instruments and the innocent purchaser rule was made to apply, and was also extended beyond the scope and reason of that rule. The stability of commercial transactions and the exigencies of trade seem sufficient reason for the rule as applied to bills of exchange and promissory notes. But the courts have gone far beyond such justifiable reason in applying the doctrine of recitals to these instruments, issued by public officers, and resting upon the public faith, the very existence of which involve legislative action and are wholly of public concern. Yet the rule affecting private contracts, as relied on by innocent purchasers, has been so extended in its scope until recitals in such bonds by officers having authority to act in such matters, may make such issues,

however negligent and criminal in conception, or however false may be the recitals, and the innocent purchaser is not even held to prudent inquiry as to the legality of the acts of such public officers.

Indeed, it is generally held that such officers may defy constitutional inhibition, as in the case of the limit of indebtedness to be created, where purchasers are held innocent and the public bound, and in this way the constitution-itself nullified.

The theory of all this is that the recitals as to legality are the inducement upon which the purchaser is presumed to act. And yet, under the rule, this presumption may not be overcome by the establishment of the contrary fact. This fiction of the law appears to make him an innocent purchaser, to the extent that he may lawfully rely on recitals of municipal bonds, even though he may not in fact have read such recitals, or in any sense relied on them, or even if he did not know of the existence of any such recitals at the time of the purchase.

This seems to be the state of affairs in the present instance. Here the father of the plaintiff was one of the principal owners and founders of the East Colfax Railway Company and the East Denver Water Company.

The East Denver Water Company acquired and sold to the Town of Fletcher the interests for which the bonds in question purport to be issued. The interested parties in the said railway corporation, and the said water company, founded the town of Fletcher, and at the first meeting after its organization the board of trustees of the town passed the ordinance purporting to authorize the issue of these bonds.

The testimony shows that at the date of the ordinance the population of the town consisted of about forty souls, and at least half of these lived at the hotel in the

town, and were employes of the railroad corporation, and some of the trustees and officers of the town were officials and employes of the railroad corporation, of which the father of plaintiff was one of the owners. It appears that during this period the plaintiff was residing with his father in the city of Denver, now adjoining the town of Fletcher.

Also, that the plaintiff was living with his father at the time he purchased the bonds, though, beginning in 1893, he attended school in Boston for some years.

Plaintiff testifies he purchased the bonds in question from his father, who apparently received them at the time of their issue. It is clear that two of the five members of the board of trustees were not present at the meeting when the ordinance was passed, and that they were not notified that such a meeting was to be held, nor does it appear that it was at a regular meeting.

The record further shows that the district court, in 1900, enjoined the officers of the town from further levy and collection of tax for the purpose of the payment of interest on the bonds, and so far as the record shows such injunction is still in force.

Plaintiff testifies he purchased the bonds in June, 1906, long after the injunction, and after the *Hickman* suit was instituted. He says he paid his father $20,500, or just half of the face value of the bonds. At the date of this purchase, interest had not been paid on the bonds since 1896, or for a period of ten years. The judgment shows an accumulated interest at the time of the judgment of $33,449.00 or a profit on this investment so recklessly made in four years of $53,949.00.

It is true that plaintiff testifies that he had no knowledge of the alleged invalidity of the bonds, nor of the injunction or other litigation concerning the same.

The following is from plaintiff's testimony as to the purchase:

"Q. Did it not occur to you that the bonds might have been discredited, or that there might be something affecting the validity of the bonds, when you found that you could purchase them for one-half of their face value? A. I did not think of it at the time, no. I had just recently come from Cripple Creek, and I had made quite a good deal of money, and this was not the only bunch of securities that were turned over to me,—I had a whole lot more, and when these were turned over to me—in fact, I asked for some securities for my money, and he said 'here is a good security,' and I took that along with the rest; I didn't ask any questions about it; I didn't think of it at the time; it was entirely natural in dealing with him; I just simply took the bonds as they were handed to me.

"Q. Did you not know, Mr. Hayden, at the time that you purchased, that the town had declined and refused to pay coupons for a number of years prior to the date of your purchase in 1906? A. No, sir.

"Q. Did you examine the bonds when you purchased them? A. No, sir.

"Q. And the coupons? A. No, sir.

"Q. Didn't even look at the bonds? A. No, sir.

"Q. Didn't count the number of coupons? A. No, sir; I don't remember even opening the package that they were in.

"Q. Did you know, at the time you purchased, whether or not any interest coupons had been paid? A. I didn't know anything about the bonds at all; I had never heard of the bonds, and didn't know there were any until they were handed over to me.

"Q. This was a large amount of money to invest, was it not, Mr. Hayden, without inquiring at all with ref-

erence to what you were purchasing? A. Well, it might
have been if I had purchased them from somebody else,
but I had perfect confidence in the man that I purchased
the bonds from."

It will be seen from this that the plaintiff purchased
bonds of the face value of $41,000.00, with ten years' ac-
cumulated interest, for $20,500.00; that he had not heard
of them before that time; that he did not even count the
bonds or coupons; did not look at them; did not even open
the package in which they were, and so could not have
even known that the package contained bonds, and relied
wholly on his father.

From this testimony he could not be certain that the
package contained bonds at all, but contends that under
the law the recitals in the bonds were his inducement and
reliance for their validity.

But to so hold in this case is little short of judicial
farce. It is such unjustified fiction as this that impairs
public confidence in the courts. Yet we may not depart
from the established rule. And we are now asked to fur-
ther extend the rule to apply to bonds issued by officers
without legislative authority, in this case without an or-
dinance, to issue bonds at all. It would seem that the
rule has been sufficiently extended and that the conten-
tion of the defendant cannot be sustained in reason and
justice.

This recital of the circumstances is thus made simply
to illustrate the probable intent of the legislative mind,
and the wisdom of its act, in adopting a mandatory rule
for the enactment of ordinances, seemingly imperative,
where such important interests of the people may be in-
volved; in contravention of which, or beyond which rule,
a municipal board may not go.

It likewise illustrates the wisdom of the courts in
holding that when public officials so act in violation of

the statute and without power such acts are void. It exhibits also the importance and the necessity of the sufficient defense as against those claiming under or by reason of them. The law was not intended to be one-sided, nor lop-sided. The payor of an alleged obligation must have equal right with the payee to appeal to the law designed to enforce the rights and prevent the wrongs of both alike.

The judgment is reversed.

KING, Judge, dissenting.

Decided July 8, A. D. 1912. Rehearing denied October 14, A. D. 1912.